E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0756
     Facsimile: (213) 894-6265
     E-mail:    Valerie.Makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:23-cr-00124-MCS |
|---|---|
| Plaintiff, | SENTENCING POSITION OF THE UNITED STATES OF AMERICA |
| v. | |
| FOSTER S. LAWYER, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Valerie L. Makarewicz, hereby files its sentencing position.

This sentencing position is based upon the attached memorandum of points and authorities, the Presentence Report, the files and records in this case, and such further evidence and argument as the Court may permit.

The United States of America respectfully requests the opportunity to supplement its sentencing position or otherwise respond to defendant as may become necessary.

```
Dated: August 29, 2023         Respectfully submitted,

                               E. MARTIN ESTRADA
                               United States Attorney
                               MACK E. JENKINS
                               Assistant United States Attorney
                               Chief, Criminal Division


                                     /s/
                               VALERIE L. MAKAREWICZ
                               Assistant United States Attorney

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA
```

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

The United States of America submits the following sentencing recommendation in advance of defendant's September 11, 2023 sentencing.

Over a consistent number of years, defendant TODD TIMOTHY LORENZEN ("defendant") failed to report $2,510,483.72 of wages he paid to his businesses' employees, and ultimately, according to the government's calculations, failed to pay $1,011,725 in employment tax. Docket No. 25 ("Plea Agreement"), pp. 8-11. Had the IRS not intervened, defendant would have continued his pattern of cashing checks from his business' clients for services rendered and continue to underpay hundreds of thousands in employment taxes. As seen below, defendant's tax crime was exceptionally damaging to the United States and its system of taxation.

**II. SUMMARY OF THE UNITED STATES' SENTENCE RECOMMENDATION**

The United States of America has received the Presentence Report ("PSR") and has no objection to the PSR's charge and conviction discussion, offense conduct discussion, the offense level computation, the calculation of defendant's criminal history, sentencing options discussion, or the discussion regarding factors that may warrant departure or sentence outside the advisory guideline system. Docket No. 20.

Consistent with the PSR and the government's obligations pursuant to the Plea Agreement and the Addendum filed on August 28, 2023, the United States recommends that the Court find that defendant's total offense level is 15, criminal history as category I, and that the advisory guideline range is 18 to 24 months

3

imprisonment. The United States respectfully recommends that the Court impose a sentence of 18 months of incarceration, followed by a one-year term of supervised release, and enter a restitution order that defendant pay to the IRS the amount of $1,011,725.

### III. PLEA AGREEMENT

On March 17, 2023, the parties filed a plea agreement with respect to this case. See Docket No. 6. Defendant agreed to plead guilty to a single-count Information which charged defendant with a violation of aiding and assisting in the preparation of a false tax return in violation of 26 U.S.C. § 7206(2), pertaining to an IRS Form 941 for the 4th Quarter of 2016 (October 1 through December 31, 2016) for Mulligan's Painters, defendant's business, with the IRS. See Docket No. 1.

In addition, defendant and the United States agreed to a base offense level of 20. See Plea Agreement, p. 12. The parties agreed that the employment tax loss for 2014 through 2017 is at least $600,198 but not higher than $1,011,725.

The United States agreed to a two-level downward adjustment for acceptance of responsibility under U.S.S.G. §3E1.1, and herein, moves the court for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b), as to date, defendant has complied with the terms set forth in the Plea Agreement, p. 13.

The parties did not agree as to defendant's criminal history or criminal history category. Id., p. 10.

### IV. RULE 11 HEARING

On April 19, 2023, defendant pled guilty to count one of the Information. Docket No. 19.

### V. SENTENCING GUIDELINES CALCULATION

On August 28, 2023, the parties filed an addendum to the plea

4

agreement. Docket No. 25.  On or around November 1, 2023, an amendment to the United States Sentencing Commission's Sentencing Guidelines, U.S.S.G. § 4C1.1, will take effect pertaining to defendants with zero criminal history points meeting certain criteria.  Defendant meets the criteria under the amendment for a two-level decrease to his Sentencing Guidelines calculation. Id.

Pursuant to the plea agreement and the addendum in this case, the parties agreed that for purposes of calculating the base offense level, the total amount of tax due and owing from defendant was between $600,198 but not higher than $1,011,725. Plea Agreement, p. 12.  Since the tax loss caused by defendant's criminal conduct was more than $550,000 but less than $1,550,000, defendant's base offense level is 20. U.S.S.G. §§ 2T1.4(a)1) and 2T4.1(H); Plea Agreement, p. 12.  After allowing for a three-level reduction for the acceptance of responsibly pursuant to U.S.S.G. § 3E1.1 and a two-level reduction pursuant to the new U.S.S.G. § 4C1.1, defendant's total offense level is 15.  Id.  An offense level of 15 falls within Zone D of the Sentencing Guidelines, and results in a range of 18 to 24 months imprisonment.

In the PSR, without taking into consideration USSG § 4C1.1, the United States Pretrial and Probation Office agreed that the guidelines imprisonment range for a level 17 is 24 to 30 months. PSR, p. 3.  The Probation Office did not identify any factors that would warrant a departure or variance from the advisory guideline range. PSR, ¶¶ 112, 113.

**VI. ARGUMENT**

The United States of America finds that the nature and circumstances of the offense committed by defendant, and defendant's personal history and characteristics are reasons for a low-end

5

sentencing under the Sentencing Guidelines. Under the factors enumerated in 18 U.S.C. § 3553, the Court should sentence defendant to 18 months incarceration. Based on the facts and circumstances of this case, and based on the characteristics of this individual defendant, a Guidelines sentence is necessary to satisfy the mandate of section 3553(a) that the sentence "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense

Section 3553(a)(1) charges the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, both which weigh in favor of a sentence of imprisonment for 18 months.

The level of tax loss in this matter, between $600,198 but not higher than $1,011,725, and its relationship to the appropriate punishment of 18 months, is reflected in the advisory Sentencing Guidelines, which use tax loss as the measure for the appropriate sentence. As the background to Section 2T1.1 of the Sentencing Guidelines notes, as the potential benefit from the tax offense increases, the sanctions necessary to deter also increases. Defendant's failure to correctly report the amount of wages paid to his employees, coupled with his failure to pay the resulting taxes owed to the IRS, does not harm a faceless bureaucracy, but all the honest and hardworking American citizens and residents who go to work each day, file their tax returns, and pay their fair share of taxes

6

as the law requires of them.

While the parties agreed that defendant used the money received by cashing checks from his clients to pay his employees under the table, such act does not justify his actions.  That defendant had business expenses like the wages he paid in cash, but did not use the money to enrich himself, does not validate his poor business accounting and misses the point of the crime for which defendant was charged and plead guilty.

As the Court is aware, 26 U.S.C. § 7206(2) is a crime of perjury and lying on a tax return, as opposed to 26 U.S.C. § 7201, tax evasion, which requires that the defendant have the intent to evade taxes.  In an attempt to deflect and mitigate, in the plea's factual basis, defendant contended that <u>all</u> of his employees received cash wages in addition to their payroll checks, effectively arguing that that the money he failed to report was not used for personal benefit, but rather, to pay his business's expenses (of wage labor).  While the defendant may not have had the specific intent to evade taxes when he failed to report all of the wages paid to his employees, certainly, every 90 days, when defendant filed his quarterly employment tax returns, defendant knew that not all of the wages paid to his employees was reported, and therefore, he would owe far less in employment taxes to the IRS had he reported wages truthfully.  The tax law requires every individual and corporation to correctly report wages paid to employees and does not permit for taxpayers to pick and choose what to report on their tax returns. Defendant's decision to not correctly file his employment tax return and thereafter, pay the corresponding employment taxes, was not because he was destitute or lacked the financial means to pay, rather, he made repeated and conscious decisions to cash checks outside of his business back accounts, not report the correct amount of wages paid, repeatedly lie

to his tax return preparers, and spend the money owed to the United States as he saw fit.

### B. Goals of the Criminal Justice System

Defendant's sentence should reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

Defendant has pleaded guilty to tax offenses from which he has derived pecuniary benefits. Particularly in tax cases, respect for the law is a crucial consideration. Every member of our society is affected directly by the tax laws. In addition to promoting the general public's respect for the law, it is also important to promote this defendant's respect for the law.

The Court should consider what constitutes just punishment for the defendant's offenses, which at the core, equate to total disregard for tax law and requirements undertaken by the citizens of the United States of America. A sentence of 18 months imprisonment is just.

### C. Adequate Deterrence to Criminal Conduct

Defendant's sentence must provide adequate deterrence to criminal conduct, both to deter the defendant from committing future crimes, and also deter others who made by disposed to commit similar offenses.

"Taxes are the lifeblood of government, and their prompt and certain availability an impervious need." Bull v. United States, 295 U.S. 247, 259 (1935). The criminal tax laws are designed to protect the integrity of the nation's tax system and to obtain and preserve funds needed for public services. Criminal tax prosecutions serve not only to punish the violators, but also to promote respect for the tax laws. Strong enforcement is necessary to encourage all taxpayers

to abide by the rules and pay their fair share of taxes, as well as to allow the public to have confidence in the fact that everybody plays by the same rules.

Defendant's sentence must provide adequate deterrence to criminal conduct, both to deter the defendant from committing future crimes, and also deter others who made by disposed to commit similar offenses. Sentencing defendant to a prison term, combined with restitution, will send a message that failing to file correct tax returns comes at a large cost, and is certainly not worth the risk.

### D. Kinds of Sentences Available

The Court must consider the kinds of sentences available under the relevant statutes. Based on the level of loss in issue, and that the offense level falls within Zone D of the Sentencing Guidelines sentencing table, and sentence of 18 months imprisonment is appropriate.

### E. Relevant Policy Statements

The Sentencing Guidelines contains persuasive guidance about the appropriate sentences for offenses involving taxation. As the U.S.S.G. states:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. Part T, Introductory Commentary (November 1, 2021). This policy has been affirmed by the Ninth Circuit. United States v. Orlando, 553 F.3d 1235 (9th Cir. 2009)(affirming an upward variance

in tax evasion case because it found that the guideline range "failed to capture tax crimes particular sensitivity to deterrence."); United States v. Bragg, 582 F.3d 965, 969-70 (9th Cir. 2012)(remanding to the district court a probationary sentence in a tax crime case where the district court expressed doubts that deterrence works in tax cases and noting that "Congress, in enacting the law, and the Sentencing Commission, in prescribing prison for tax offenses, set out a policy."). The Sentencing Guidelines recognize that tax offenses, in and of themselves, are serious offenses and that the amount of the tax loss should be the main focus at sentencing. U.S.S.G. § 2T1.1, Background Comment. Because a greater tax loss is obviously more harmful to the Treasury and more serious than a smaller one, the Sentencing Guidelines recognize that the sanction necessary to deter future tax crimes should increase as the potential benefit from the offense increases. Id.

    Such commentary is supported in this case by several factors, including but not limited to the fact that: (1) the statutory maximum sentence under 26 U.S.C. § 7206(1) is three years per count; (2) the guideline range provides an advisory sentence which weighs in favor of a sentence of incarceration (18-24 months); (3) defendant's failure to correctly report his gross receipts on TLCC's tax returns occurred over a number of years, and was not aberrant behavior, but rather, ongoing conduct.

    The United States recommends that a sentence of 18 months of incarceration is appropriate in this case. Eighteen months of incarceration is no more than is necessary to accomplish the goals of section 3553(a). The factors enumerated in 18 U.S.C. § 3553(a), in combination with the recommended advisory guidelines, call for the imposition of a sentence of incarceration as both appropriate and necessary. A sentence of incarceration that is within the Sentencing

Guidelines and is supported by the section 3553(a) factors would reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes of the defendant.

**VII. RESTITUTION**

Where the parties diverge is not with the offense conduct or even guidelines calculation, but rather the computation of one portion of the tax computation—the amount of withholding tax applicable in this case, which influences the amount of restitution owed by defendant.

When an employer employs an employee, the IRS requires the employer to obtain a Form W-4 from the employee. Form W-4 tells the employer the employee's filing status (such as single, married filing joint, etc.), amount of deductions, and any additional amount to withhold from each paycheck to use to compute the amount of federal income tax to deduct and withhold from the employee's pay. When an employer pays the employee, the employer will withhold a certain amount of taxes from an employee's paycheck in trust and then, typically bi-weekly, or by law by at least the end of the quarter, pay over that amount to the IRS for the employee. Therefore, "withholding" is the amount of federal income tax withheld from your paycheck. The amount of income tax an employer withholds from your regular pay depends on two things, the amount an employee earns, and the information given to employer on Form W-4.

When an employer does not get a Form W-4 from an employee, the employer has no way of knowing how much withholding to withhold from the employee's paycheck. That's what occurred here. As seen in the factual basis, defendant would receive payment from his clients by

11

check and would go to a check cashing store to cash the check. Typically, an employer would deposit the check into an operating account and/or keep track of how much was paid by the job so at the end of the year, an employer would know how much the business made – its gross income.  However, defendant failed to keep records of the income his business earned and when/how much of the cashed check he would use to pay some of his employees their wages.  Some employees had given defendant a Form W-4 and when these employees were paid by payroll check, defendant withheld in accordance with the amounts requested by the employee on the Form W-4.  Sometimes, defendant paid the same employee not by check with the accurate amount of withholding paid over to the IRS, but by cash.  He would not withhold any taxes from the cash he paid these employees, regardless of whether the employee had given defendant a Form W-4.  Other employees he never obtained a Form W-4, paid these employees only cash, and never withheld or paid over any amount of tax to the government.

The IRS has regulations that require an employer to withhold from the wages of an employee if they never receive a Form W-4 from the employee, so that the employer can remain compliant with the law to withhold taxes from an employees paycheck.  In situation where defendant wanted to pay cash to his employees without the employee submitting a Form W-4, the employer would use the "supplemental withholding rate," where a flat rate is applied to amounts that are considered to be supplemental wages. Supplemental wages are compensation paid in addition to an employee's regular wages. They include, but are not limited to, bonuses, commissions, overtime pay, payments made for accumulated sick leave, severance pay, awards, prizes, back pay, fringe benefits and expense allowances paid under a

non-accountable plan. The authority for supplemental withholding can be found in Treas. Reg. § 31.3402(g)-1, and one can also find more information in IRS Publication 15. The supplemental withholding rate for 2003 through 2017 was 25%.

In this situation, since defendant did not receive any Forms W-4 from his employees who he paid under the table (whether it was in addition to their wages he paid via check, or always paid cash), under the law, defendant should have withheld the default 25% of withholding from those employees and paid it over to the IRS for their benefit. Defendant failed to include certain payments in wages for a group of employees. The employee could have taken himself out of the supplemental withholding situation and obtained a lower withholding rate if the employee provided the Form W-4 information to defendant, which would allow defendant to apply the actual withholding rate. Since defendant did not obtain Forms W-4, the restitution amount based on the supplemental withholding rate will be difficult to overcome by defendant.

Defendant shared with the government his own calculation of what he believes the withholding rate should be, which is much lower than the required 25% rate, but such estimated calculation is not permitted by Application Note 3 in U.S.S.G. § 2T1.1. In the first part of the application note, the Sentencing Commission gave guidance on the allowance of automatic and standard deductions, credits, or deductions to "ensure a reasonable estimate of the tax loss." However, the Sentencing Commission was clear that a defendant cannot get the benefit of any estimate at sentencing when payments are made to third parties in a manner that encourages or facilitated a separate violation of law (e.g., "under the table" payments to

employees…"), which is the case here.

The IRS was able to obtain the checks defendant cashed from copies of checks received from the check cashier.  The IRS was able to calculate the total amount as follows as noted on page 11 of the plea:

| Year | Total amount cashed checks | Amount Cashed Divided Per Quarter | 25% Supplemental Withholding Rate Per Quarter | Total amount per year required to be withheld under 25% Supplemental Withholding rate |
|---|---|---|---|---|
| **2014** | $617,053.88 | $154,263.47 | $38,565.87 | $154,263.47 |
| **2015** | $407,549.84 | $101,887.46 | $25,471.87 | $101,887.46 |
| **2016** | $745,31 | $186,328 | $46,582 | $186,328 |
| **2017** | $740,568 | $185,142 | $28,326.73 | $185,142 |
| **Total** | **$2,510,483.72** | | | **$627,620.93** |

Then, the IRS divided the total amount of checks by four, for each quarter for each year.  The IRS then took 25% of each quarter of the checks cashed to determine the supplemental withholding rate. The total amount of withholding that defendant should have taken from the cash he paid his employees ($2,510,483.72) under the supplemental rate for 2014-2017 is $627,620.93.  The parties have agreed to the calculation of social security and Medicare taxes (which also should have been taken out of the employees' paychecks), as seen on page 11 of the plea.  Therefore, as calculated by the government, below is a summary table of the total amount of employment taxes defendant owes the IRS:

| Year | Social Security & Medicare Taxes | 25% Withholding | Total Employment Tax per year |
|---|---|---|---|
| 2014 | $94,409.24 | $154,263.47 | $248,672.71 |
| 2015 | $62,355.16 | $101,887.46 | $164,242.62 |
| 2016 | $114,032.72 | $186,328 | $300,360.72 |
| 2017 | $113,306.92 | $185,142 | $298,448.92 |
| Grand Total | $384,104.04 | $627,620.93 | $1,011,724.97 |

Restitution should be sent to IRS – RACS, Attn: Mail Stop 6261, Restitution, 333 W. Pershing Ave. Kansas City, MO 64108.

In the restitution order, the IRS requests that the court delineate the amount of tax owed per quarter, so the IRS can properly credit any restitution. Below is a chart delineating those amounts:

| Year | Amount of Employment Tax Owed per quarter |
|---|---|
| Q1-2014 | $62,168.18 |
| Q2-2014 | $62,168.18 |
| Q3-2014 | $62,168.18 |
| Q4-2014 | $62,168.18 |
| Q1-2015 | $41,060.66 |
| Q2-2015 | $41,060.66 |
| Q3-2015 | $41,060.66 |
| Q4-2015 | $41,060.66 |
| Q1-2016 | $75,090.18 |
| Q2-2016 | $75,090.18 |
| Q3-2016 | $75,090.18 |
| Q4-2016 | $75,090.18 |
| Q1-2017 | $74,612.23 |
| Q2-2017 | $74,612.23 |

| | |
|---|---|
| Q3-2017 | $74,612.23 |
| Q4-2017 | $74,612.23 |

## VIII. CONCLUSION

Based upon the above, the United States respectfully recommends that after giving consideration to the advisory guideline range as amended, the positions set forth in the PSR, the United States' position herein and in the Plea Agreement, and 18 U.S.C. § 3553(a), defendant be sentenced as follows:

1. A sentence of 18 months of incarceration;

2. A term of 1 year supervised release;

3. A restitution order should be entered in the total amount of $492,050 to be paid to the Internal Revenue Service and applied in accordance with 26 U.S.C. § 6201(a)(4);

4. Conditions imposed as enumerated in the PSR.

              Respectfully submitted,

              E. MARTIN ESTRADA
              United States Attorney
              MACK E. JENKINS
              Assistant United States Attorney
              Chief, Criminal Division

DATED: ____8/29/23_____ _/s/_____
              VALERIE L. MAKAREWICZ
              Assistant United States Attorneys
              Attorneys for the United States